Oral argument not to exceed 15 minutes for plaintiffs, 15 minutes to be shared by defendants. John Kulowitz for the appellant. Thank you, Your Honor. May it please the Court. John Kulowitz for Hess Ohio Resources LLC.  Thank you, Your Honor. I ask to reserve three minutes for rebuttal. This is a consolidated appeal from two diversity judgments that have interpreted the extension provision of an Ohio oil and gas lease. The judgments are at odds with each other and with the terms of the lease. They cannot coexist and the lease cannot function properly with either judgment. We are here today to ask the Court to reverse, to declare that the lease is unambiguous and that it provides the right to two consecutive and identical five-year terms to drill a well and to establish that the lease in each case remains in effect. Do you have a fallback position that it is at least ambiguous and that summary judgment was inappropriate? Your Honor, we believe that upon de novo review, this Court should grant the relief sought, but if the Court determines that the lease is unambiguous, then we believe that the case of action would be to remand to both courts for further proceedings. As I understand it, you raised the usage of trade. I don't know if they use that exact expression, but you raised that in both cases but only introduced evidence in support of that in one case? Your Honor, the evidence in support of it was introduced in the Kelledge case. To the extent that we're talking about treatises and volumes such as that, those are admissible and fairly in the record for both cases regardless of whether there is... So you introduced that in both cases? You gave that information to the Court in both cases? In the Kelledge case, yes, Your Honor. No, no, but you say treatises. Our treatises are cited in both cases. In both cases? Yes. Okay, and then how do you explain the use of the word primary term in the delay payment section? This is a conventional oil and gas lease and like almost every other modern oil and gas lease there are two phases. There is a primary term for the purpose of drilling a well and then if the drilling is successful and moves into production then the secondary phase kicks in for as long as oil and gas is produced. If you look at the purpose of the extension provision and at the literal terms of the contract it becomes established that the only reasonable construction is for the Court to determine that the second term must be on the same terms and conditions as the first term. Well, it says on the same terms and conditions, but the lease has many terms and conditions and the delay payment I mean why did it have to, why couldn't it have just said you can delay the commencement of drilling operations may be further delayed for periods of 12 months each? Why couldn't they just put period there? Why did it have to say during the primary term? There's no need to pay during the secondary term because you have your rights. During the secondary term the royalties would kick in. So it makes it explicit that it is during the drilling phase that the delay rental process is operative here. But what supersedes all that when we're talking about an extension phase, Your Honor is where it says that the lessee has the option to extend for an additional five years under the same terms and conditions contained in the lease so you look at the pattern of the established primary term which is the payment of an upfront bonus within 12 months of which either drilling must commence or Hess must pay the mineral owners a prescribed fee. And then the same process, the clock starts running for another 12 months and the same process repeats itself at the end of the second, third, and fourth years of the lease. Well, do you agree that one could certainly read this as saying that only applies to the primary term above, they say, for a primary term of five years? Yes, but that is the essence of the lease and the drilling, the commitment to establish a fixed number of years, a fixed period of time for drilling is the essence of the lease. So the purpose of the delay rental clause, the extension provision, is to provide adequate time to accommodate the practical realities of drilling in a new and unconventional development such as the Utica Shale in Ohio. So what we do, so what you do then is you necessarily, if there is, the whole reason for having an extension is to allow further time to drill a well. And the same process necessarily would operate during that. It would not make sense, Your Honor, under the terms of the lease, to have a extension period, a five year extension period, but with only limited rights and opportunities there. Then if you had just started the well, you would have had the extension anyway. Well, if the well had been commenced, if there had been a well commenced within the first five years, then if it was not yet in production, paragraph six of the Kellich lease or paragraph seven of the Griffith lease would provide you can continue until completion of the well and then either go forward or not. Who drafted these documents? Your Honor, they were produced by Mason Dixon Energy Incorporated, which was the company on the ground in Ohio at the time. They were, as you can tell from the interlineations in there, they were negotiated with the landowners. In the Kellich case where we had discovery, the Kellich's were represented by council and we did not have the... They leave a lot of things to be desired in terms of clarity, I would say. How much money nowadays, fracking has now changed the character of the relationships and to some extent there's a lot more money involved now or what is the background of all this? Well, the relationships remain the same. You still have the mineral owner and the drilling company. In the context of the economy? Well, in the context of the economy, you've went back to December 21, 2006 and June 14, 2007. That was in the very early days of the interest in horizontal drilling in the state of Ohio. It started over in Pennsylvania and then geologists saw the same formations in Ohio so thought we should go explore there. These leases were executed at a time when very little was known, when a lot less was known on both sides of the equation. A lot less was known to the landowners, a lot less was known to the oil companies here. So that's reflected in the market price. The oil companies, it was a much bigger risk at that time to take a stake in Ohio and the landowners had the commensurate side of that risk. Over time, as the Utica shale has been explored, tested and developed, then the market has shifted. There are parts of the play that are now more valuable and there are parts that are less valuable. So the market has changed both ways. Landowners want to get out of the lease in order to make a better lease with somebody else because the market price has changed. I think that's the impetus for the litigation, but remembering that the central oil company wants to keep it in place because it has a lease at a cheaper price than it would otherwise get today. Remember that the central long-term key benefit of this lease is the one-eighth royalty when and if gas and oil are produced. That's the whole purpose of it from the oil company's perspective. They need that amount of time because in order to develop a play like this, as it's called in the oil industry, a lot has to happen. You have to have exploratory drilling, geological and geophysical surveys, core samples, seismic studies. Does the actual payment, though, once you, let's say the drilling yields something, does the payment correspond to the market price? The royalty payment, yes, Your Honor. Okay, and counsel, two questions. First of all, did you provide notice and allow time for Hess to rectify any payment errors as required by the terms of the lease before seeking the declaratory relief that the leases were in fact terminated? Your Honor, we raised that issue in the district court. The mineral owners did not provide notice of any payment issue here. They did not give us a chance to let that provision of the oil and gas lease operate. If we should say along that same line that paragraph of the lease, what is it, 17, about notice, that the oil companies have not been given notice as required by that paragraph which says that if action has not been taken or money not paid or whatever, then the landowner will give notice and there are so many days to rectify. Your view is you're still, whatever the interpretation about the primary term and how long that lasts and the repetition of the primary term, whatever the result there is, your contention is you're still entitled to notice and a period of time given to rectify the situation, right? If it comes down to that, yes, Your Honor. If it does come down to that, then what action is the oil company likely to take as a result of the notice or the failure to give notice, but now the giving of notice subsequently? Well, the point is more pertinent to the Kelledge case because that's the case in which, to the surprise of everybody, of all parties who had agreed and understood that for the extension provision to kick in, all you needed was to pay the extension bonus. But the judge in the Kelledge case ruled that no, you have to pay also the delay rental payment. And that was to everyone's surprise in the court. So the notice provision there, if there is a notice provision, there was not a delay rental payment paid to Mr. and Mrs. Kelledge in order to effectuate the option. Counsel, why shouldn't the savings provision of the leases apply to preserve the lease even assuming that the payment obligation was not fulfilled? Why shouldn't the savings provision in the leases apply to preserve it? Your Honor, we believe that it ought to apply. We would agree with that. The mineral owners may have a different view of that. Did you raise the notice issue on appeal? I know you raised it below. Did you argue the court got that wrong on appeal? Your Honor, it is not one of the main parts of our brief, no. The main focus... But is it in there? I mean, did you appeal it, that ruling? Well, you can tell me on rebuttal. But I've got one other question. Did you argue below that under Ohio law, the lease does not have to be ambiguous on its face to be able to introduce evidence of usage in the industry? Well, Your Honor, I mean, that's part of the rules of evidence. The learned treatise is part of it, yes. But we did argue... No, no, no. You're not listening. Okay. It's a legal argument that unlike other types of leases where you need to have an ambiguity to be able to introduce parole or extraneous or whatever type of evidence, that in Ohio you can introduce evidence of meaning in the industry even without having to find that the lease is ambiguous on its face. Did you make that argument? Your Honor, let me respond to that during the reply  Did you handle the cases below? No, Your Honor. I was briefly involved in the reconsideration phase, but not during the actual presentation of the motions. I'm sorry. I should know that, Your Honor. Okay. Thank you. You'll have time on rebuttal. What we have here, though, is we have two district courts that are at odds with each other. They cannot coexist. One court said the lease is ambiguous. The other says that it is not. One court says that you must pay a delayed rental payment if you want the additional. The other court says you may not pay. One court says that you get one year. One court says you get five years plus. But the plain and simple way for this court to resolve the dilemma is to look to the Easton v. Chesapeake-Appalachia case, which provides a sound road map here. Thank you. Good morning, Your Honors. Counsel, Police Court. Christopher Gagen on behalf of both appellees in both this question, if I might, please, about the forfeiture and the expiration and the notice provisions. Because there is a difference between a forfeiture and an expiration under the terms of the lease as written. And so it's appellee's position that we were not obligated to make a notice that, hey, Hess, you failed to make this delayed rental payment at the end of year five because under the terms of paragraph four, Your Honor, it specifically says that if they don't make the payment, the lease terminates under its own terms. And that's the difference. That's the legal distinction as to why a notice is not required. If it is a notice requirement, then in the lease, I mean, you've got a the term, it terminates, but the notice provision says it doesn't terminate until notice is given and the opportunity for the oil company to rectify the situation. So we've got a square to I mean, this lease is a mess. I agree with that. And so in order to try to carry out guessing at what the intention of this is, it seems to me that if you've got a notice requirement, you've got a notice requirement. My response to that, Your Honors, there's a difference in this lease between a requirement, something we're actually required to do, and then the option to do something. This lease really creates a series of one-year contracts with this delay rental. You mean you don't have to, if you don't give notice that's automatically going to terminate the? Yes, Your Honor, because that's what paragraph four says. Where does it, I don't, read it to me where it says that. Yeah, I'd be happy to, Your Honor. Under paragraph four, delay rental payments, if operations for drilling are not commenced on the lease premises, on acreage pooled therewith as provided below, on or before 12 months from this date, this lease shall then terminate as to both parties. Now read the notice provision. Paragraph 17, Your Honor. Actually, 17 there is the title curative notices. Failure to pay or error in paying any rental or other payment due here under shall not constitute a ground for forfeiture of this lease and shall not affect lessee's. Forfeiture is the same as the result. It's similar or the same result. Well, let me ask you this, Your Honor. How is it that the landowners are to know whether Hess intended not to pay or forgot to pay? Because the way they set this up, and let's remember. Well, it doesn't, that termination, that notice provision doesn't turn on intent. It turns on fact. Well, but you'd be reading the contract to say that they, their argument is essentially this is a 10-year primary term, correct? That's their argument. But the reality is is that they still have to make a choice, the physical choice to pay the delay rental at the end of each year to get that next year. And they also have another opt-out in terms of the extension payment, and there's even one additional one where they have the right to simply surrender, a paragraph 12 lease, Your Honor, they can simply surrender or they can walk away from any part or all of the lease premises at any time. Yeah, but you've got to give them notice if they haven't paid something you think they should have paid. And that's what the paragraph says. Now, I don't know what the result of that would be, but that is obviously a provision of the lease designed in case the oil company forgets or whatever to give them notice and realize that they're about to lose their lease. Respectfully, I think there's the distinction between forfeiture and termination of the terms of lease. The one case I would like to cite, because I was here yesterday, I was listening to the court, and they said what law do you have to support this? It's Brown v. Fowler. It's a 1901 case. And Judge Merritt, you said yesterday you don't always have the facts you want, but you've got to work with the facts you have. Well, when you read Brown v. Fowler and the defeasance clause, it's essentially set up the same. They had a two-year term in which to commence production. If they did that, they had a secondary term of up to 25 years. And the House Supreme Court said that there was a delay rental payment required both at the end of year one and at the end of year two. So what we go back to is essentially Judge Watson was right. Now, I cited Brown v. Fowler in both the Kellich case and Griffith. Griffith came first. This was a deck action, Your Honors. It was coming up on the end of year five. They were actually my neighbors, and I filed this to find out what does this say because it is so poorly written. And so I think even though Brown v. Fowler was not cited by either district court, it really does provide the foundation legally for why the delay rental payment under paragraph four is due each and every year in addition to the extension payment. If they're going to have a two-year term, then that extension payment is simply the payment for the exercise of the option. But now if you've got this ten-year primary term, you've got a gap. There's no delay rental payment according to the way they interpret this. The one thing I really do want to stress, though, is who is in the best position to make sure that if a landowner, my landowners are dairy farmers, he's a water plant worker, and Mrs. Kellich runs the Dairy Dream in St. Clairsville, Ohio, an ice cream and sandwich shop. Very good food, by the way. And how are they going to know about trade of usage? It goes back a hundred years. Is not the industry, especially in a situation like this where it is commonplace for the industry to send landmen out well in advance of when the drilling is actually going to happen. Whether or not this is actually speculation under Ohio law is not before the court. But they went and locked them up. And then Mason Dixon transferred to Marquette Exploration, LLC. Marquette Exploration was bought out by Hess. So we're down the chain of title, so to speak. And now Hess is coming back in to say what was intended, what was the intent of the parties at the beginning. Well, at least with respect to one of the lease, you have the landman saying that he discussed it. Landman, if you read that affidavit closely, Your Honor, Mr. Sires essentially says, look, it was my common practice. These guys talked, these are home solicitation contracts. It's like a fuller brush. They knock on your door, congratulations. That's a question of fact. Well, but nothing about that. That's good, isn't it? It certainly can be. But that goes to the intent. The intent ultimately for both sides is the production of oil. My point is simply, as this is being drafted, the industry has all of the experience. They have all of the knowledge. They have all of the understanding of the terms of usage. Look, this lease has not a single defined term. Could we not have cleared this all up by saying, let's see, at the expiration of the primary term, she'll have the option to extend the primary term for an additional five years? Or in paragraph two or in paragraph four, could they not have said that they'll pay during the primary term and any additional term? It's just not clear about what this primary term extension means. I mean, you can read it this way or you can read it that way. The problem that I see you've got is, in the end, you've got to give notice if you expect to terminate the lease. That's what the provision on notice says, and you know, it's not an unreasonable provision. I understand the court's perspective. I respectfully disagree. The difference between forfeiture and termination. Your view is that when it says that ...